CRAIG B. FRIEDBERG, ESQ.
Nevada Bar No. 004606
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Phone: (702) 435-7968; Fax: (702) 946-0887

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LORI MIRANDA,<br><br>    Plaintiff,<br><br>vs.<br><br>DATA SEARCH NY, INC. d/b/a TRAK AMERICA, LLC and TRAK AMERICA, DOES I-V, inclusive and ROE Corporations VI-X, inclusive,<br><br>    Defendants. | CASE NO.:<br><br><br><br>**COMPLAINT**<br>**&**<br>**EIGHT PERSON JURY DEMANDED** |

  1.     This is a claim for actual and statutory damages brought by the named plaintiff, LORI MIRANDA (hereinafter referred to as "Plaintiff" or "Miranda"), for Defendants' violations of the Fair Debt Collection Practices Act (hereinafter referred to as the "FDCPA"), 15 U.S.C. §1692, *et seq.*, and Nevada Revised Statutes (hereinafter "NRS"), Chapters 598 et seq., and 649 et seq., as amended, and common law torts (hereinafter "State Acts"), all of which prohibit debt collectors from engaging in abusive, deceptive, harassing, unfair, and illegal practices.

  2.     Jurisdiction of this Court is invoked under 15 U.S.C. §1692k(d), 15 U.S.C. §1681(p), 28 U.S.C. §1337, and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.  Venue in this District is proper because Plaintiff resides in Nevada and Defendant's collection communications were received by Plaintiff in Nevada and Defendant does or transacts business in Nevada.

  3.     Miranda is a "consumer" as defined in the Act at 15 U.S.C.§1692a(3) who allegedly owes a (past-due) consumer "debt" as defined by 15 U.S.C. § 1692a(5) and NRS

*Law Office of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

649.010.  Miranda is also a "consumer" as defined by 15 U.S.C. § 1681a(c) of the FCRA.

4. Defendant, DATA SEARCH NY, INC. d/b/a TRAK AMERICA, LLC and TRAK AMERICA ("Trak America"), is a corporation, organized and existing under the laws of the state of New York, with its principal place of business in Syosset, NY.

5. Trak America describes its business activities on its web site (wwwtrakamerica.com) as follows:

> Welcome to the proven nationwide legal process that has recovered millions of dollars thought to be unrecoverable for the country's largest creditors and debt buyers.
>
> Step 1: Our FASTRAK predictive model determines with unparalleled accuracy exactly which accounts are worth pursuing.
>
> Step 2: Secure, streamlined and automated processes transmit suit worthy accounts to the right attorney quickly and efficiently.
>
> Step 3: The TRAKAmerica legal network-the best in the business-obtains your legally enforceable judgments.
>
> Step 4: Our in-house skip tracing experts facilitate execution on your judgments by identifying hard-to-find assets and collecting the money owed to you.
>
> Result: Maximum net back for TRAKAmerica clients.
>
>> "TRAKAmerica recovered more than $27 million last quarter on warehouse paper we thought was uncollectible."
>> -----  Publicly traded US credit card issuer

7. The name web site further states:

> TRAKAmerica is a rapidly growing legal network management company founded in 2000. With its unique approach, the company has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's success is built on a nationwide network of local attorneys combined with a rigorous analytic approach to managing thousands of accounts.
>
> TRAKAmerica's unique advantage is the FASTRAK predictive model built on empirical data from more than one million claims and nearly $100 million in court costs in all fifty states. Combining FASTRAK with vigorous attorney management maximizes net back for TRAKAmerica's clients.

8. The same web site further states:

> Disciplined Attorney Management
>
> To keep our attorneys as. productive as possible TRAKAmerica takes a

hands-on approach. With over 125 firms nationwide in our network, TRAKAmerica treats legal management as a high volume production operation. We follow a streamlined management process to get your accounts into the courts faster.

From our database of more than a million claims we know exactly what to expect in terms of suit and judgment rates, and we manage our attorneys to these expectations. Overall performance is managed at the batch level and reviewed weekly. Work assignments are reviewed frequently and business shifts are made based on performance.

Because FASTRAK indicates which accounts to sue, we only forward productive accounts to our attorneys, with the cut-off calibrated by client to achieve individual client IRR and net back goals. As a result, our attorneys don't waste their time and your money on unproductive cases.

9.      The same web site further states.:

 Step 2: Getting To Court Quickly and Efficiently

Once we've run your portfolio through our model and reviewed the net back projections, our TRAKAmerica team designs a complete recovery plan based on your requirements.

First, we prepare your portfolio for our attorney network by identifying suit worthy accounts and skip tracing them for accuracy (addresses, names etc.). As we verify information, we also attempt to collect from these accounts on your behalf.

As a legal network, we can use legal talk off language in these conversations, which often means debtors agree to a payment plan rather than face the legal process.

This immediately creates cash flow for you and also helps fund court costs on accounts that ultimately will go through the legal process.

Step 3: The TRAKAmerica Legal Network

On day 31, we electronically disburse your files to our network attorney . They load your files into their systems and instantly send demand letters.

After the 30-day validation period expires, our attorneys sue those individuals who have not responded to their demand letters. Results are electronically posted and delivered to our offices each week.

It's an entirely transparent system for full accountability.  Each week, our management team examines exception reports that reflect which accounts arc still outstanding. The report includes:

    legal suit dates

    service dates

    court information

Law Office of
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968  Telecopier (702) 946-0887

      judgment information (principle [sic] and interest)

      court costs

      attorney fees

Our clients have the option of connecting electronically to our reporting system so they can check on the status of their portfolio at anytime.

Our collection firms also follow our no-fail data security measures, including firewall intrusion detection software, encryption, and stringent internal security control systems.

At this stage, our TRAKAmerica team has obtained judgments on your bad debt accounts. We dedicate our efforts and resources-including in-house skip tracing and asset location programs-to collecting the money owed to you.

Skip and asset information is promptly supplied to our attorneys so they can devote their time to collecting from bank accounts, garnishing paychecks, and placing liens on properties.

We are no longer requesting money from debtors - we are actively taking it....

10. The mails and interstate wire communications are used to conduct the business of Trak America.

11. Trak America regularly collect or attempt to collect consumer debts owed or due or asserted to be owed or due another and is a "debt collectors" as defined by 15 U.S.C. § 1692a(6).

12. The alleged debt was allegedly incurred by Miranda primarily for personal, family, or household purposes.

13. Plaintiff is unaware of the true names and legal capacities, whether individual, corporate, associate, or otherwise, of the Defendants DOES I-V and ROE Corporations VI-X, sued herein inclusive, and therefore sues Defendants by such fictitious names.

14. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as DOES I-V and ROE Corporations VI-X, are in some way legally responsible and liable for the events referred to herein, and proximately caused the damages alleged herein.

15.     Plaintiff prays leave to insert said Defendants' true names and legal capacities when ascertained.

16.     At all times material hereto, and in doing the acts and omissions alleged herein, the Defendants and each of them, including DOES I-V and ROE Corporations VI-X, acted individually and/or through their officers, agents, employees, and co-conspirators, including the fictitious Defendants named herein, each of whom was acting within the purpose and scope of that agency, employment and conspiracy, and said acts and omissions were known to, and authorized and ratified by, each of the other Defendants.

**FACTUAL ALLEGATIONS**

17.     Plaintiff repeats, realleges and incorporates by reference paragraphs one through sixteen, inclusive, above.

18.     On or about June 8, 2007, Defendant, through its agent, the Law Office of Gerald A. Phillips (also a debt collector as defined by 15 U.S.C. § 1692a(6))("Phillips office"), spoke with Plaintiff at her place of work regarding an alleged past due account with Capital One.

19.     Plaintiff, feeling that the person who spoke to her on the telephone was communicating in a threatening and harassing manner, sent an email to the Phillips office "requesting that all communications from your firm cease and desist."

20.     On or about July 10, 2007, a lawsuit was filed in the name of Capital One Bank against Miranda in the Las Vegas Justice Court, case no. 07C028394, for the purpose of collecting a purported credit card debt incurred for personal, family or household purposes, in which the amount requested was $4,415.63.  ("collection action").

21.     On or about July 9, 2008, Defendant Trak America, again through its agent, the Phillips office, sent Miranda a dunning letter on the same account that is the subject of the aforesaid collection action, attempting to collect 9,906.70, identifying the "creditor" as "Capital One Bank/TRAK AMERICA" ("dunning letter").  A true and

- 5 -

1  accurate copy of the dunning letter is attached hereto, marked as Plaintiff's Exhibit 1.

2      22.    Plaintiff is informed and believes, and on that basis alleges, that Exhibit 1
3  is the initial dunning letter from Defendant.

4      23.    A motion for summary judgment and an attached affidavit of Terry
5  Kulbaba, notarized by Karl Hernandez were served on Miranda in March 2009.  A true
6  and accurate copy of the affidavit is attached hereto, marked as Plaintiff's Exhibit 2.

7      24.    Plaintiff is informed and believes and therefore alleges that both Terry
8  Kulbaba ("affiant" or "Kulbaba") and Karl Hernandez ("notary"or Hernandez") were in
9  fact employees of Trak America when Exhibit 2 was executed on July 12, 2007.

10      25.    Neither Kulbaba nor Hernandez are employees of Capital One Bank.

11      26.    Kulbaba regularly executed affidavits similar to Exhibit 2 as "agent" of
12  Capital One Bank.

13      27.    Hernandez regularly notarized affidavits similar to Exhibit 2 knowing that
14  the signers of the affidavits were employees of Trak America and not employees of
15  Capital One Bank.

16      28.    Exhibit 2 does not disclose the fact that the affiant is an employee of Trak
17  America.

18      29.    Exhibit 2 does not disclose the fact that the notary is an employee of Trak
19  America.

20      30.    By describing affiant as an "agent" of Capital One Bank, and without
21  identification of the company for which the affiant and the notary work, Exhibit 2
22  conceals the identity of the business preparing the document, Trak America, and makes
23  it appear to come from Capital One Bank.

24      31.    The mails and interstate wire communications were used to send Exhibit
25  2.

26                 **CAUSES OF ACTION**
27                      **COUNT ONE**

28      32.    Plaintiff repeats, realleges and incorporates by reference paragraphs one

- 6 -

1   through thirty-one, inclusive, above.

2   33.   Section 1692c(c) requires that a debt collector, once notified by a consumer in writing that the consumer wishes the debt collector to cease further communication with the consumer, "shall not communicate further with the consumer with respect to the debt."

34.   Defendant's dunning letter, Exhibit 1, was sent after the Defendant received Miranda's cease and desist email, and by mailing it to Miranda, has violated section 1692c(c) of the FDCPA.

35.   Section 1692g of the FDCPA requires that a debt collector include a validation notice with, or send it within five (5) days of, the initial communication from the debt collector to the consumer.  This notice is intended to advise the consumer as to certain federal rights in connection with a procedure under which a consumer may dispute a debt, request verification of a debt, or obtain certain information about the creditor within 30 days of an initial communication from a debt-collector.

36.   Defendant's dunning letter, Exhibit 1, does not contain the language required by §§1692g, 1692g(a)(3), 1692g(a)(4), 1692g(a)(5) and 1692g(b) of the FDCPA.

37.   Defendant's dunning letter also violated numerous other provisions of the FDCPA by:

(a) failing to break out the amount of interest, charge, fee or expense incidental to the principal obligation ("incidental charges") that had been added to the principal of the debt by the creditor before receipt of the item of collection from the interest added to the principal of the debt by the collection agency (15 U.S.C. §§ 1692e(2), 1692e(5), 1692f(1), 1692g(a)(1), and NRS 649.375(2));

(b) attempting to collect or collecting incidental charges without first breaking out these incidental charges (15 U.S.C. §§ 1692e(2), 1692e(5), 1692f(1), 1692g(a)(1), and NRS 649.375(2));

(c) using false representations and deceptive means to collect a debt allegedly due to another in violation of 15 U.S.C. § § 1692e, 1692e(2), 1692e(10) and

- 7 -

1692e(14); and

   (d) using unfair or unconscionable means to collect a debt allegedly due to another in violation of 15 U.S.C. §§ 1692f and 1692f(1).

## COUNT TWO

38. Plaintiff repeats, realleges and incorporates by reference paragraphs one through thirty-one, inclusive, above.

39. The FDCPA, 15 U.S.C. §1692e states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....
>
> (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization....

40. Contrary to the statements in the affidavit, Kulbaba did not "review[ ]" the books and records of Capital One Bank nor is qualified to testify about the records of Capital One Bank or the procedures used by Capital One Bank to generate, and could not "testify competently" to anything.

41. The statements in Exhibit 2 that the Kulbaba reviewed the books and records of Capital One and has personal knowedge and can testify competently as to all facts pertaining to the alleged debt and collection action are false and violate 15 U.S.C. §1692e and e(10).

42. Exhibit 2 does not disclose the fact that the affiant and the notary are employees of Trak America.

43. The purpose of the convoluted "agent" statement is to confuse and hide for whom the affiant works.

44. By describing affiant as an "agent" of Capital One Bank, without identification of the company for which the affiant works, Exhibit 2 conceals the

1 identity of the business preparing the document, Trak America, and amounts to the use
2 by Trak America of a business, company, or organization name ("Capital One") other
3 than the true name of the debt collector's business, company, or organization and
4 violates 15 U.S.C. §1692e and e(14).

**COUNT THREE**

45. Plaintiff repeats, realleges and incorporates by reference paragraphs one through forty-four, inclusive, above.

46. Defendants' violations of the state Acts include, but are not limited to, the following: NRS Chapters 598 et seq., and 649 et seq., by using any device, subterfuge, pretense or deceptive means or representations to collect any debt.

47. NRS 598 (deceptive trade practices) and 649 (collection agency practices), in tandem, allows a state claim for deceptive trade practices where the collection agency engages in harassing tactics, which has been defined in NAC 649.150 as "a violation by any collection agency or collection agent of any of the provisions of 15 U.S.C. §§ 1692b to 1692j, inclusive" (i.e., the FDCPA).[1]

---

[1]N.R.S. 41.600 allows for an action by victims of fraud. It states in pertinent part:
　　1. An action may be brought by any person who is a victim of consumer fraud.
　　2. As used in this section, "consumer fraud" means:
　　　　　　* * *
　　　　(d) A deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive.
NRS 598.0923(4) defines deceptive trade practices as conducting a business by using "coercion, duress or intimidation in a transaction;" NRS 598.092(8) defines deceptive trade practices as "knowingly misrepresent[ing] the legal rights, obligations or remedies of a party to a transaction;" and NRS 598.0915(15) defines deceptive trade practices as "knowingly mak[ing] any other false representation in a transaction."
　　Furthermore, NRS 598.0953 states that the specific deceptive trade practices defined in NRS 598.0915 to 598.0925, inclusive, "are in addition to and do not limit the types of unfair trade practices actionable at common law or defined as such in other statutes in this state (emphasis added)." NRS 649.375(5) pertains to prohibited acts of collection agencies. It states, in pertinent part, that a collection agency "shall not ... engage in any conduct that constitutes harassment as defined by regulations adopted by the commissioner."

(continued...)

1    48.    In addition, Defendants' acts and omissions violated NRS 649.370 (Violation of federal Fair Debt Collection Practices Act) and NRS 649.375(1), (2) and (5) (Prohibited practices).

49.    Defendant acted in bad faith and unfairly with the intent to deprive Plaintiff of her rights or property. Furthermore, Defendant knew of the probable harmful consequences of its wrongful acts and engaged in a willful and deliberate failure to act to avoid those consequences.

50.    As a result of the above acts and omissions, Plaintiff is entitled to her actual damages, statutory damages, exemplary damages, fees and costs.

## DEMAND FOR JURY TRIAL

51.    Please take notice that Plaintiff demands trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays, that judgment be entered against Defendant, for the following:

---

[1](...continued)
The regulations can be found in NAC 649.150, which states that:
> The commissioner of financial institutions will consider *a violation by any collection agency or collection agent of any of the provisions of 15 U.S.C. §§ 1692b to 1692j, inclusive, as those sections existed on July 1, 1986, to be an act or omission inconsistent with the faithful discharge of the duties or obligations of a collection agency or collection agent* and grounds for the suspension or revocation of the license of the collection agency or collection agent. [Banking Div., Harassment in Debt Collection Reg., eff. 1-17-79]—(NAC A by Admstr. of Financial Institutions, eff. 6-29-84; A by Comm'r of Financial Institutions, 5-19-88) (Emphasis added.)

Thus, a judgment finding Defendants violated any of the provisions of the FDCPA, would also establish that it engaged in harassing conduct toward Plaintiff, which is the basis of this claim for relief.

Moreover, such acts would also be considered in violation of 15 U.S.C. §1692f, and therefore, a violation of NRS 649.375(5). 15 U.S.C. §1692f states, in pertinent part:
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

- 10 -

1    (1)    For general and compensatory damages;

2    (2)    For statutory damages pursuant to 15 U.S.C. § 1692k in the amount of $1000.00;

(3)    For exemplary damages;

(4)    For reasonable attorney fees for all services performed by counsel in connection with the prosecution of this claim;

(5)    For reimbursement for all costs and expenses incurred in connection with the prosecution of this claim; and

(6)    For any and all other relief this Court may deem appropriate.

DATED this 6th day of July 2009.

Respectfully submitted by:


/s/ Craig B. Friedberg, Esq.
4760 South Pecos Road, Suite 103
Las Vegas, Nev. 89121
Attorney for Plaintiff

*Law Office of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887